2005-NMCA-078

114 P.3d 393

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Mark MONTOYA, Defendant–Appellant.**

**No. 24,060.**

Court of Appeals of New Mexico.

April 21, 2005.

Certiorari Denied, No. 29,214, June 6, 2005.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Appellee.

John Bigelow, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

PICKARD, J.

{1} The important issue in this case is whether this Court's holding in *State v. Morales*, 2002–NMCA–016, ¶¶ 5–11, 131 N.M. 530, 39 P.3d 747, that trial courts may designate certain offenses as serious violent ones, limiting defendants' opportunity for good time credit, without running afoul of defendants' jury trial rights, survives recent Unit-

ed States Supreme Court cases further refining the opinion in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We hold that it does survive recent Supreme Court decisions, although for different reasons. Finding the other issues raised by Defendant to be without merit, we affirm his convictions and sentence.

## BACKGROUND

{2} Defendant was convicted of vehicular homicide committed while driving while intoxicated (DWI) and child abuse. He raises five issues on appeal: (1) whether the evidence was sufficient to convict him of vehicular homicide because there was insufficient evidence that he was impaired at the time of driving; (2) whether there was sufficient evidence to allow the trial court to designate the offense as a serious violent offense pursuant to the Earned Meritorious Deduction Act, NMSA 1978, § 33-2-34 (2004) (EMDA); (3) whether the EMDA's allowing the trial court to find the facts that underlie the serious violent offense designation for offenses listed in Section 33-2-34(L)(4)(n) violates Defendant's constitutional rights under *Apprendi;* (4) whether the trial court abused its discretion in refusing to change the venue; and (5) whether the trial court abused its discretion in admitting evidence that a blood test showed alcohol in Defendant's blood when the trial court denied admission of the amount of alcohol because the test was taken more than four hours after Defendant was driving. We state the facts in our discussion of the particular issues.

### Sufficiency of the Evidence of Impairment

{3} The standard of review for sufficiency of the evidence has been often stated. We must determine whether a rational jury could have found each essential element of the crimes charged to be established beyond a reasonable doubt, when viewing the evidence in the light most favorable to the State and indulging all inferences in favor of the verdict. *State v. Carrasco*, 1997-NMSC-047, ¶¶ 10-11, 124 N.M. 64, 946 P.2d 1075. This Court does not consider the "merit of evidence that may have supported a verdict to the contrary." *State v. Kersey*, 120 N.M.

517, 520, 903 P.2d 828, 831 (1995) (internal quotation marks and citation omitted). When a defendant argues that the evidence and inferences present two equally reasonable hypotheses, one consistent with guilt and another consistent with innocence, our answer is that by its verdict, the jury has necessarily found the hypothesis of guilt more reasonable than the hypothesis of innocence. *State v. Chandler*, 119 N.M. 727, 732, 895 P.2d 249, 254 (Ct.App.1995). Our Supreme Court has recently stated that the evidence is not to be reviewed with a divide-and-conquer mentality, *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285, as though we were the finders of the facts. We do not reweigh the evidence or substitute our judgment for that of the jury. *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789.

{4} The evidence presented below was that Defendant was the driver of a pickup truck in which a woman and two children were with him in the cab, which was designed to hold three people, and that none of the children were restrained with child restraints. They were driving after dark on a mesa, where the road was relatively straight, except where it turned near the accident. There were wild animals seen and killed on the winding road leading up to the mesa, but no such animals on the mesa itself. Defendant's truck went off the road at the turn; in the opinion of the investigating officers, Defendant failed to negotiate the turn, overcorrected, left the road, and rolled over. One of the children was ejected during the roll-over, and she died at the scene. There was a partially empty, fresh beer bottle lying on the ground along the path the truck took as it rolled over.

{5} Defendant claimed that he swerved to avoid an animal, but there was testimony that there were no signs of braking and no animal tracks or other evidence of animals in the wet dirt in the vicinity. Defendant was evasive about the subject of drinking to police and passers-by who had stopped to give assistance. He smelled like alcohol, and at least one witness said that he had bloodshot eyes and slurred speech, and another witness said Defendant was leaning against the wom-

an from the truck and rolling around in some fashion. He ultimately admitted to having had "one or two beers." Defendant would not submit to a blood draw authorized by a warrant at first, adopting a fighting stance and telling the officers that they would "have to take [him] down." Upon being threatened with taser guns, he eventually submitted to the blood test, and alcohol was present in his blood. This was four hours after the accident. An officer opined that Defendant's conduct showed that he was driving while intoxicated.

{6} Based on the evidence of impairment demonstrated to the people who saw Defendant right after the accident, his evasiveness about his drinking and his initial refusal to submit to the warrant ordering the blood test, the evidence contradicting his claim about swerving to avoid an animal, the alcohol in his blood four hours after the accident, and the officers' opinions, a rational jury could easily have found beyond a reasonable doubt that Defendant was impaired by alcohol, and his impairment made him less able to the slightest degree to exercise the clear judgment and steady hand necessary to handle a vehicle safely. *See* UJI 14–243 NMRA. The evidence was more than sufficient to support the verdict of homicide by vehicle.

### Sufficiency of Evidence of Serious Violent Offense

{7} In *Morales*, 2002–NMCA–016, ¶¶ 12–16, 131 N.M. 530, 39 P.3d 747, in addition to finding the statute constitutional, we also construed the statute and explained the sort of findings that a trial court must make to designate the offenses listed in Section 33–2–34(L)(4)(n) as serious violent ones such that defendants would be limited to four days per month of good time credit, instead of the thirty days per month otherwise available. We held that a court must find that the offenses were "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *Id.* ¶ 16. In fact, we gave an example of the offense at issue here and explained the ways in which it could be viewed as a serious violent offense or not:

> Likewise, homicide by vehicle always results in death, but it can be committed by one who had only one drink but is thereby less able to drive safely, or it can be committed by one who intentionally and habitually gets drunk to the point of being several times over the legal limit, knowing that he or she must drive in a crowded area and is in no shape to do so, but does so nevertheless.

*Id.* ¶ 15. In this case, after emphasizing Defendant's prior convictions, the trial court stated:

> And I am also prepared to find that based on the priors, not based on the age of the victim, although I know that is a very emotional component of this case, that this does qualify as being a serious violent offense; and I'll make the finding that over the course of the period of 15 years your history shows that you have not brought what appears to be a drinking problem under control[ ], that except for what I believe is one court ordered time, you really have not availed yourself of treatment to bring the problem under control, and this has made you a danger to others who are out on the road. And it's this danger that ultimately resulted in the death of Santana Sanchez. I am going to recognize that this differs from the *Morales* case to that extent, and falls somewhere within that spectrum I talked about, how those DWIs have been considered in that case.
>
> That will be the finding.

As the trial court recognized, this case falls somewhere in between the two extremes described in *Morales*, and the question we must answer is whether the trial court could have found that it crossed over the line into being a serious violent offense.

{8} Subsequent cases have established that the trial court need not express its findings in the *Morales* language as long as the findings are consistent with the *Morales* standard. *State v. Cooley*, 2003–NMCA–149, ¶¶ 18–19, 134 N.M. 717, 82 P.3d 84. And in *State v. Wildgrube*, 2003–NMCA–108, ¶¶ 34–38, 134 N.M. 262, 75 P.3d 862, we affirmed a

serious violent offense designation in circumstances that cannot be meaningfully distinguished from those in the case at bar. In *Wildgrube,* a substantial record of alcohol-related offenses, including four arrests resulting in two convictions for DWI, satisfied the standard of knowledge. *Id.* ¶ 37. The defendant's behavior of continuing to drink and drive on the occasion in question while looking away from the road to do something else satisfied the standard of recklessness. *Id.* ¶¶ 37–38. We reviewed the trial court's actions in designating the offense as a serious violent one for abuse of discretion. *Id.* ¶ 34. A trial court will abuse its discretion when its decision is not supported by substantial evidence. *Brooks v. Norwest Corp.,* 2004–NMCA–134, ¶ 7, 136 N.M. 599, 103 P.3d 39.

{9} We, therefore, review the facts and circumstances before the trial court. In this case, the showing at sentencing was of a defendant who had a fifteen-year history of DWI arrests (five) and convictions (three), more than the defendant in *Wildgrube,* and for which Defendant had served seven, thirty, and ninety days. Letters from Defendant's family noted that nothing had worked to keep Defendant from drinking. The trial court knew about the excluded evidence of Defendant's blood alcohol concentration (BAC), which was. 10 approximately four hours after the accident. The trial court stated that Defendant's long history of a drinking problem, with him having done nothing to bring it under control, made him a danger to others that ultimately resulted in a death.

{10} Under these circumstances, we believe that the *Morales* standard is met. Defendant raises no issue concerning the physical violence aspect of the *Morales* standard. The knowledge aspect is shown by the long, prior history of a drinking problem. The recklessness is exhibited by Defendant's continuing to drive drunk after several prior encounters with the law and doing so in a particularly heedless manner—with two children in the car, at least one of whom was not restrained sufficiently to keep her from being ejected and killed. There was no abuse of discretion in this case because the facts supported the designation of the offense as a serious violent one.

### Survival of *Morales*

{11} The *Apprendi* doctrine states, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *State v. Wilson,* 2001–NMCA–032, ¶ 12, 130 N.M. 319, 24 P.3d 351 (internal quotation marks and citation omitted). We held in *Morales* that this doctrine did not apply to the question of whether a defendant would be entitled to earn four days or thirty days of credit per month under the discretionary subsection of the EMDA. The majority decision in *Morales* was grounded in part on the rationale of *Wilson,* which has since been shown to have been erroneous. *See Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); *State v. Frawley,* 2005–NMCA–017, 137 N.M. 18, 106 P.3d 580, *cert. granted,* 137 N.M. 266, 110 P.3d 74 (2005). Thus, this rationale for the result in *Morales* has not survived.

{12} However, there was a separate concurrence in *Morales,* 2002–NMCA–016, ¶¶ 21–25, 131 N.M. 530, 39 P.3d 747 (Bustamante, J., specially concurring), written by the same judge who dissented in *Wilson,* 2001–NMCA–032, ¶¶ 45–59, 130 N.M. 319, 24 P.3d 351 (Bustamante, J., concurring in part and dissenting in part). This separate opinion agreed with the result in *Morales* on the basis that the EMDA has a similar effect on defendants' sentences as the mandatory minimum scheme that was upheld by the Supreme Court in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), which was not called into doubt by *Apprendi,* 530 U.S. at 487, 120 S.Ct. 2348 n. 13.

{13} For the reasons stated in that separate concurrence, which has not been called into doubt by subsequent cases, the *Morales* holding, that a judge is permitted to make the finding of serious violent offense triggering the limitation of earned credit to four days, does survive. *Apprendi* itself acknowledged that it did not overrule *McMil-*

*lan* and "limit[ed] its holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict—a limitation identified in the *McMillan* opinion itself." *Apprendi*, 530 U.S. at 487, 120 S.Ct. 2348 n. 13. *Blakely* also pointed out that *McMillan* "involved a sentencing scheme that imposed a statutory *minimum* if a judge found a particular fact" and the Court therein "specifically noted that the statute does not authorize a sentence in excess of that otherwise allowed for [the underlying] offense." *Blakely*, 542 U.S. 296, 124 S.Ct. at 2538 (internal quotation marks and citation omitted) (alteration in original). Finally, the Court in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 746–47, 749, 752, 756, 160 L.Ed.2d 621 (2005), repeatedly emphasized that it is sentences beyond the "statutory maximum" or "maximum sentence[s]" imposed by the judge not based solely on the facts found by the jury or admitted by the defendant with which the *Apprendi* doctrine is concerned (internal quotation marks and citation omitted).

{14} In this case, the effect of the EMDA is not to change anything with regard to any maximum sentence. Defendant's sentence for his fourth DWI offense that resulted in a death was twelve years—six years for the underlying crime and two years added for each prior DWI, pursuant to NMSA 1978, § 66–8–101(C) and (D) (1991) and NMSA 1978, § 31–18–15(A)(5) (1999). This was the basic sentence without any aggravating factors. *See* § 66–8–101(C) and (D); § 31–18–15.

{15} What changed by virtue of the EMDA was the amount of time that Defendant could earn as a credit on his sentence by participating in programs while incarcerated. The amount of good time it was possible to earn was changed from thirty days per month to four days per month. *See* § 33–2–34(A)(1), (2). If the "practical net effect of the EMDA is to impose a mandatory increased minimum sentence," we continue to believe that the "EMDA and Pennsylvania statutes [at issue in *McMillan* ] are not precisely the same, but their effect is substantively identical." *Morales,* 2002–NMCA–016,

¶ 24, 131 N.M. 530, 39 P.3d 747 (Bustamante, J., specially concurring). Neither *Apprendi* nor subsequent cases have cast any doubt on the *McMillan* rationale, and they continue to be limited to sentence beyond the statutory maximum, which is not at issue in this case. Accordingly, we hold that the factors that the EMDA allows the judge to find in order to limit credit under Section 33–2–34(L)(4)(n) do not have to be found by the jury beyond a reasonable doubt.

### Change of Venue

{16} Defendant contends that the trial court abused its discretion in refusing to change the venue after Defendant made a showing of extensive pretrial publicity that included media reports on his BAC results that were excluded from evidence by the trial court. However, the trial court conducted extensive individual voir dire and struck many members of the venire. Moreover, Defendant does not show that there was any problem with any of the jurors seated for his trial, and he does not contend that he was denied his right to a fair and impartial jury.

{17} As in *State v. Barrera,* 2001–NMSC–014, ¶¶ 14, 18, 130 N.M. 227, 22 P.3d 1177, the question here is whether the trial court abused its discretion in failing to change venue, not whether Defendant presented enough evidence that the trial court would have been within its discretion to change venue. As in *Barrera,* because Defendant's showing was of the latter variety and because the trial court took care to seat a fair and impartial jury, we cannot say that discretion was abused. *See id.* ¶ 18.

### Admission of Blood Alcohol Evidence

{18} As previously indicated, the trial court excluded evidence of Defendant's BAC of .10, but allowed evidence that Defendant had alcohol in his blood. The basis of the trial court's decision was the pretrial presentation of testimony by an expert who said that the BAC score only indicated Defendant's BAC at the time of the test, four hours after the accident, and that while retrograde extrapolation could determine his BAC at the time of the accident, in this case, there was too much room for error. Accordingly, the trial court excluded the BAC score, finding that it would be unduly prejudicial,

but allowed the State to inform the jury that Defendant did have alcohol in his blood when tested because such evidence was relevant, and when combined with the other evidence in the case, it provided corroborating evidence of impairment.

{19} Defendant contends that the trial court abused its discretion in this ruling because the absence of relation-back testimony applies equally to the presence of alcohol and the exact amount thereof. We disagree.

{20} Defendant relies on *State v. Baldwin*, 2001–NMCA–063, ¶ 8, 130 N.M. 705, 30 P.3d 394, but *Baldwin* does not go as far as Defendant suggests. *Baldwin* was concerned with a prosecution for driving with a particular BAC, *id.* ¶ 7, and the evidence was that the defendant's BAC was precisely at that particular level two hours after the accident, *id.* ¶ 4. *Baldwin* was not a case involving the admission or exclusion of evidence, but it was instead a case about whether the evidence was sufficient to convict the defendant of the specific crime charged. *Id.* ¶¶ 23–24.

{21} In this case, in contrast, at issue is whether certain evidence ought to be excluded. The basis of the trial court's pretrial ruling was not that the evidence of the .10 BAC had no bearing on the issues in the case; instead, it was that with the jury's common knowledge of .08 being the legal limit and without evidence of how the .10 related back to the time of driving, the evidence would be unduly prejudicial. However, the evidence of alcohol in Defendant's system four hours after the accident provided some evidence of alcohol in his system at the time of the accident inasmuch as there was no testimony of drinking after the accident. Evidence does not have to conclusively prove a proposition to be relevant. It is enough that the evidence have some tendency to make a fact in issue more or less probable than it would be without the evidence. *See* Rule 11–401 NMRA.

{22} The fact that the trial court excluded evidence of the actual result of the test on Rule 11–403 NMRA grounds did not mandate that evidence of the presence of alcohol was also too prejudicial. The admission or exclusion of evidence is reviewed for abuse of discretion. *State v. Brown*, 1998–

NMSC–037, ¶ 32, 126 N.M. 338, 969 P.2d 313. The essence of a discretionary ruling is that it be not illogical, not unreasonable, and not contrary to facts and circumstances before the trial court. *See Bursum v. Bursum*, 2004–NMCA–133, ¶ 25, 136 N.M. 584, 102 P.3d 651 ("An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." (internal quotation marks and citation omitted)). In this case, not only can we not say that the trial court abused its discretion, but it appears to us that the trial court exercised a sound discretion and one, indeed, that was favorable to Defendant.

## CONCLUSION

{23} We affirm Defendant's convictions and sentence.

{24} **IT IS SO ORDERED.**

BUSTAMANTE, C.J. and VIGIL, J., concur.