This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                            **NO. A-1-CA-36759**

**ISAIAS SALCIDO,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Kea W. Riggs, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
John Charles Bennett, Assistant Public Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}    Defendant Isaias Salcido appeals from his convictions, after a jury trial, of

trafficking controlled substances, contrary to NMSA 1978, Section 30-31-20 (2006),

and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001). In this Court's notice of proposed disposition, we proposed to summarily affirm. [CN 1, 10] Defendant filed a memorandum in opposition (MIO) and motion to amend the docketing statement, which we have duly considered. Remaining unpersuaded, we deny Defendant's motion to amend the docketing statement and affirm.

**Pretext and Sufficiency**

{2}     Defendant continues to argue pretext and sufficiency, as he did in his docketing statement. [DS 6-7; MIO 8, 15] With regard to these issues, we note that Defendant has not asserted any new facts, law, or arguments that persuade this Court that our notice of proposed disposition was erroneous. [*See* id.] *See Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683 ("Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law."); *State v. Mondragon*, 1988-NMCA-027, ¶ 10, 107 N.M. 421, 759 P.2d 1003 (stating that "[a] party responding to a summary calendar notice must come forward and specifically point out errors of law and fact[,]" and the repetition of earlier arguments does not fulfill this requirement), *superseded by statute on other grounds as stated in State v. Harris*,

2013-NMCA-031, ¶ 3, 297 P.3d 374. We therefore refer Defendant to our analysis in our notice of proposed disposition.

{3}     We additionally note that, although Defendant continues to argue that there was insufficient evidence to support a reasonable jury finding that Defendant intended to transfer the methamphetamine to another, we reiterate that the evidence—that Defendant was in possession of a cup with a substance determined to be 21.35 grams of methamphetamine in it; that he had a digital scale with residue and two baggies with residue on his person; that amounts of drugs closer to an ounce (28.35 grams) indicate that it is more likely that the intent is to traffic; and that there was no other user-paraphernalia found in the vehicle [MIO 4-6; CN 6-9]—was sufficient to uphold the conviction. *See State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930 (stating that sufficiency review is highly deferential; that we view the evidence in the light most favorable to the State, resolving all conflicts and making all possible inferences in favor of the jury's verdict; and that we "do not search for inferences supporting a contrary verdict or re-weigh the evidence because this type of analysis would substitute an appellate court's judgment for that of the jury" (internal quotation marks and citation omitted)); *State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542, 226 P.3d 641 (stating that "circumstantial evidence alone can amount to substantial evidence" and that "intent is subjective and is almost always inferred from other facts

in the case" (alterations, internal quotation marks, and citation omitted)); *State v. Michael S.*, 1995-NMCA-112, ¶ 7, 120 N.M. 617, 904 P.2d 595 (stating that "[i]ntent need not be established by direct evidence, but may be inferred from the [defendant]'s conduct and the surrounding circumstances").

{4}     Again, it is for the jury to resolve any conflicts in the testimony and determine weight and credibility. *State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482. We do not re-weigh the evidence, and we may not substitute our judgment for that of the fact-finder, as long as there is sufficient evidence to support the verdict. *State v. Griffin*, 1993-NMSC-071, ¶ 17, 116 N.M. 689, 866 P.2d 1156; *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789 (same), *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683. Moreover, to the extent Defendant presented a different version of the facts, the jury was free to reject his version. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Indeed, "[w]hen a defendant argues that the evidence and inferences present two equally reasonable hypotheses, one consistent with guilt and another consistent with innocence, our answer is that by its verdict, the jury has necessarily found the hypothesis of guilt more reasonable than the hypothesis of innocence." *State v. Montoya*, 2005-NMCA-078, ¶ 3, 137 N.M. 713, 114 P.3d 393.

**Motion to Amend: Fundamental Error**

4

{5} Defendant additionally seeks to raise three issues pursuant to his motion to amend: (a) whether the district court fundamentally erred by not including a definition of "inference" in the jury instructions; (b) whether his Fourth Amendment to the United States Constitution rights were violated by the officer asking him for his name and searching for his identification; and (c) whether his New Mexico Constitutional rights were violated for the same reason. [MIO 3; *see also* MIO 12, 15, 19] In order for this Court to grant a motion to amend the docketing statement, the movant must meet certain criteria that establishes good cause for our allowance of such amendment. *See State v. Moore*, 1989-NMCA-073, ¶¶ 41-42, 109 N.M. 119, 782 P.2d 91, *superceded by rule on other grounds as recognized in State v. Salgado*, 1991-NMCA-044, ¶ 2, 112 N.M. 537, 817 P.2d 730; *State v. Rael*, 1983-NMCA-081, ¶¶ 15-16, 100 N.M. 193, 668 P.2d 309. The essential requirements to show good cause for our allowance of an amendment to an appellant's docketing statement are that "(1) the motion to amend must be timely, (2) the new issue sought to be raised was either (a) properly preserved below or (b) allowed to be raised for the first time on appeal, and (3) the issues raised are viable." *Moore*, 1989-NMCA-073, ¶ 42.

{6} Defendant seeks to add these three issues pursuant to the doctrine of fundamental error. "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-

NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. It "is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputabl[e], or open to such question that it would shock the conscience to permit the conviction to stand." *Id.* ¶ 14 (internal quotation marks and citation omitted).

{7}     <u>Jury Instructions</u>. Defendant first argues that "fundamental error results from the failure to instruct the jury on the definition of proper and improper inferences." [MIO 12] Defendant contends that since lawyers, special masters, and "trial court judges require guidance on the magnitude of evidence needed to make permissible inferences," then "a jury of laypersons needs such a definition even more." [MIO 13] Defendant additionally asserts that "[a] brief statement that the verdict should not be based on speculation, guess or conjecture, as the charge here instructed, is not a substitute for the definitions given in" the cases cited. [MIO 13 (internal quotation marks and citation omitted)]. We disagree.

{8}     Defendant indicates that a permissible inference has been defined as forming "a rational and logical deduction from facts admitted or established by the evidence," being "linked to a fact in evidence," and/or being "a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence." [MIO 12-13 (citing *State v. Garcia*, 2016-NMSC-034, 384 P.3d 1076, and *Slade*, 2014-NMCA-088, ¶ 14 (alterations, internal quotation

6

marks, and citation omitted))]. In the present case, the jury was instructed, in pertinent part, as follows:

> You alone are the judges of the credibility of the witnesses and the weight to be given to the testimony of each of them. In determining the credit to be given any witness, you should take into account the witness's truthfulness or untruthfulness, ability and opportunity to observe, memory, manner while testifying, any interest, bias or prejudice the witness may have and the reasonableness of the witness's testimony, considered in the light of all the evidence in the case.
>
> . . . .
>
> You are the sole judges of the facts in this case. It is your duty to determine the facts from the evidence produced here in court. Your verdict should not be based on speculation, guess or conjecture. Neither sympathy nor prejudice should influence your verdict. You are to apply the law as stated in these instructions to the facts as you find them, and in this way decide the case.

[RP 99-100]

{9}     Even assuming the jury was required to be instructed on *how* to properly draw conclusions from the evidence, in the manner suggested by Defendant, we conclude that, viewing the instructions as a whole, the jury was properly instructed in this case—particularly as it was instructed that its verdict should not be based on speculation, guess, or conjecture. *See State v. Montoya*, 2003-NMSC-004, ¶ 23, 133 N.M. 84, 61 P.3d 793 (stating that we view the jury instructions as a whole); *cf. Hourigan v. Cassidy*, 2001-NMCA-085, ¶ 33, 131 N.M. 141, 33 P.3d 891 (concluding that a tendered jury instruction that was duplicative and did not provide the guidance

7

that the party contended the jury needed was not error). Indeed, instructing a jury that it is to determine the facts from the evidence and it is not to base its verdict on speculation, guess, or conjecture essentially instructs the jury that it should form rational and logical deductions from the evidence. We see no need to further instruct the jury to use rationality and logic.

{10}     Defendant has failed to show how the omission of a definition of inference from the jury instructions presents exceptional circumstances, puts a miscarriage of justice in danger of occurring, renders Defendant's innocence indisputable, or shocks our conscience to let his conviction stand. *See Barber*, 2004-NMSC-019, ¶¶ 8, 14. We therefore conclude that Defendant has failed to prove fundamental error, and we deem the issue non-viable. *See Moore*, 1989-NMCA-073, ¶ 42.

{11}     <u>Impermissible expansion of stop</u>. Finally, with regard to Defendant's search and seizure issues, Defendant argues that "[s]ince the encounter necessarily was measurably prolonged by identifying [Defendant] by his name and birth date and searching through booking photos rather than simply viewing his tangible identification, the Fourth Amendment was violated, resulting in fundamental error[,]" and that "[s]ince the courts have emphatically barred officers from questioning passengers during routine traffic stops—unless the passengers own the vehicles in which they are riding—and since the encounter here cannot reasonably be described

8

as consensual or based on reasonable suspicion, Art. II, [Section] 10, was violated, resulting in fundamental error." [MIO 15, 19] We address each issue in turn.

> Because both the United States and the New Mexico Constitutions provide overlapping protections against unreasonable searches and seizures, we apply our interstitial approach. The interstitial approach requires that we first consider whether the right being asserted is protected under the federal constitution. If the right is protected by the federal constitution, then the state constitutional claim is not reached. If not, we next consider whether the New Mexico Constitution provides broader protection, and we may diverge from federal precedent for three reasons: a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics.

*State v. Ketelson*, 2011-NMSC-023, ¶ 10, 150 N.M. 137, 257 P.3d 957 (internal quotation marks and citations omitted).

{12}    "As we recently explained . . ., a defendant must properly preserve his argument under the state constitution in order for us to consider it on appeal." *Id.* Because Defendant did not raise either federal or state constitutional argument below, we consider both for fundamental error. *See* Rule 12-321(B)(2)(c) NMRA (noting that we may consider, in our discretion, issues that were not preserved but involve fundamental error). [*See* MIO 4, 15, 19 (stating that the issues are raised as fundamental error)] As indicated above, "fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice," and it "is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputabl[e], or open to such question that it would shock the conscience to

9

permit the conviction to stand." *Barber*, 2004-NMSC-019, ¶¶ 8, 14 (internal quotation marks and citation omitted).

{13} First, with regard to Defendant's contention pursuant to the United States Constitution, our Supreme Court has clarified the standard when evaluating expansions of traffic stops under the Fourth Amendment in *State v. Leyva*, 2011-NMSC-009, 149 N.M. 435, 250 P.3d 861:

> Because the touchstone of any Fourth Amendment analysis is reasonableness, we must conduct a fact-bound, context-dependent inquiry in each case. Furthermore, we conclude that it would be inappropriate merely to evaluate the reasonableness of the interval of prolongation in isolation. Instead, the proper inquiry is whether the totality of the circumstances surrounding the stop indicates that the duration of the stop as a whole—including any prolongation due to suspicionless unrelated questioning—was reasonable.

*Id.* ¶ 22 (emphasis, alteration, internal quotation marks, and citation omitted). However, "a de minimis detention caused by questioning after the completion of the traffic stop is not unreasonable under the Fourth Amendment . . . because reasonableness is the touchstone of any Fourth Amendment analysis." *Id.* ¶ 20.

{14} In the present case, Defendant contends that he was a passenger in a car that was stopped by an officer. [MIO 15] Defendant apparently told the officer their purported destination, and, after checking the driver's information, the officer asked Defendant for his identification. [*See* MIO 2] According to Defendant's memorandum in opposition, he "spoke with the officer and told him where the car was headed, and

10

offered to show the officer his identification, presumably so the officer would know [Defendant] was licensed to take the wheel since the driver was not." [MIO 15-16] Defendant also contends that the officer said in his affidavit that he asked Defendant if he had a license on him because no one else in the car had one on them, but the officer also told Defendant that his license was not necessary and instead asked him for his name so he could look him up on his system and look through booking photographs. [MIO 16] The officer confirmed Defendant's identity and discovered a pending arrest warrant through this process. [MIO 5, 16]

**{15}** Considering the totality of the circumstances, we conclude that the officer's actions were not so unreasonable as to constitute fundamental error. *See Barber*, 2004-NMSC-019, ¶¶ 8, 14. Indeed, although Defendant contends that it would have been quicker if the officer had simply taken the offered identification, it is not unreasonable if the officer had wanted to verify that such identification constituted a valid license to drive, particularly since the driver of the vehicle could not produce such a license. [*See* MIO 2, 16] We further conclude that the officer additionally looking through some booking photographs and determining whether Defendant had an active arrest warrant, while he was verifying that Defendant had a valid license, did not impermissibly expand the scope of the stop to such a level as to constitute

fundamental error. *See id.* We therefore deem Defendant's Fourth Amendment issue non-viable. *See Moore*, 1989-NMCA-073, ¶ 42.

{16} Second, with regard to Defendant's contention pursuant to the New Mexico Constitution, "[i]t is well-established that Article II, Section 10 provides more protection against unreasonable searches and seizures than the Fourth Amendment." *Leyva*, 2011-NMSC-009, ¶ 51. We explained that we now employ a two-part test "to determine what questions are reasonably related to the initial justification for the stop and whether an officer had reasonable suspicion to expand the scope of his or her search or seizure during an investigatory stop." *Id.* ¶ 54 (internal quotation marks and citation omitted). We further noted that "[u]nrelated questions are permissible when supported by independent reasonable suspicion, for reasons of officer safety, or if the interaction has developed into a consensual encounter." *Id.* ¶ 55.

{17} In the present case, as indicated above, after the officer stopped the vehicle for apparent speeding, evasive driving, and dim light, he learned that the driver was driving without a valid license. [MIO 2] Accordingly, we decline to hold that the officer's request for Defendant's identification and ensuing search in the database was unrelated to the initial reason for the stop or otherwise unsupported by reasonable suspicion to such a degree that it would constitute fundamental error. Indeed, even if the officer's apparent desire to ascertain whether someone else in the vehicle was able

12

to drive and/or perhaps to assuage his concerns regarding the evasive driving and speeding were not reasonably related to the initial reason for the stop or otherwise permitted, we will not conclude that it presents exceptional circumstances, puts a miscarriage of justice in danger of occurring, renders Defendant's innocence indisputable, or shocks our conscience to let his conviction stand. *See id.* ¶ 54; *Barber*, 2004-NMSC-019, ¶¶ 8, 14. We therefore conclude that, under these circumstances, Defendant has failed to prove that the officer's actions constituted fundamental error under the New Mexico Constitution, and we deem the issue non-viable. *See Barber*, 2004-NMSC-019, ¶¶ 8, 14; *Moore*, 1989-NMCA-073, ¶ 42.

{18}     In sum, we are unpersuaded by Defendant's arguments and consider the three issues he seeks to add by his motion to amend non-viable. *See Moore*, 1989-NMCA-073, ¶¶ 42-43. We therefore deny his motion to amend the docketing statement and, for the reasons stated in our notice of proposed disposition and herein, affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**STEPHEN G. FRENCH, Judge**

_____

**EMIL J. KIEHNE, Judge**