This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39978**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**MARQUIS BARNES a/k/a MARQUIS DESHONE BARNES,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Court Judge**

Raúl Torrez, Attorney General
Van Snow, Assistant Attorney General
Santa Fe, NM

for Appellee

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** This opinion involves four related cases. Defendant appeals from the district court's order denying her motion to dismiss. Defendant contends that the State failed to join similar offenses, pursuant to Rule 5-203(A) NMRA. Additionally, Defendant challenges the sufficiency of the evidence supporting each conviction. Unpersuaded, we affirm.

**BACKGROUND**

**{2}**     Defendant was accused and later convicted by a jury of offenses related to the illegal use of credit cards. The first case involves an incident where Defendant obtained two nights at a hotel and $1,500 in gift cards from the hotel using a fraudulent credit card. The second case involves an incident at an auto parts store where Defendant purchased welding supplies and accessories with a fraudulent credit card. The third case involves an incident where Defendant used a fraudulent credit card to purchase furniture and linens. The fourth and final case involves several purchases of electronics by fraudulently using a Visa card. Each of these incidents occurred on separate days within a six-month period in 2017. Two incidents occurred in Aztec, New Mexico, and two in Farmington, New Mexico, cities located in Northwest New Mexico and within San Juan County, New Mexico.

**{3}**     Defendant was found guilty of falsely obtaining services in D-1116-CR-2017-00586, fraudulent use of an invalid, expired, or revoked credit card in D-1116-CR-2018-00772 and D-1116-CR-2018-00775, and fraud in D-1116-CR-2018-00027. Following the first jury conviction on February 10, 2020, in D-1116-CR-2018-00772, Defendant moved to dismiss the remaining cases because the prosecution was barred by Rule 5-203(A). A hearing on the motion was held on April 2, 2020. The district court denied the motion. In its order, the district court found that Defendant failed to request joinder of offenses before the first trial despite stating at three separate pretrial hearings that Defendant was researching the issue. The district court ultimately denied the motion because the plain language of Rule 5-203(A) compels joinder of offenses and not of "complaints" or "informations" therefore there is no remedy for failure to do so.

**DISCUSSION**

**I.     Compulsory Joinder**

**{4}**     We first address Defendant's argument that the jury convictions in three separate cases should be vacated because the State violated Rule 5-203(A) by failing to join offenses. The State argues that Defendant waived her right to joinder; in the alternative, the State argues that it was not required to join the charges because they were not of the same or similar character. We conclude that Defendant waived her right to joinder by failing to request it.

**{5}**     "The question of whether offenses must be joined under Rule 5-203(A) is a question of law that we review de novo." *State v. Webb*, 2017-NMCA-077, ¶ 11, 404 P.3d 804. Rule 5-203(A) provides:

>         Two or more offenses shall be joined in one complaint, indictment
> or information with each offense stated in a separate count, if the
> offenses, whether felonies or misdemeanors or both:

(1) are of the same or similar character, even if not part of a single scheme or plan; or

(2) are based on the same conduct or on a series of acts either connected together or constituting parts of a single scheme or plan.

"The rule does not require that the cases be 'identical.'" *Webb*, 2017-NMCA-077, ¶ 15. "The rule is mandatory; it is not a discretionary or permissive rule; it demands that the [s]tate join certain charges." *State v. Gonzales*, 2013-NMSC-016, ¶ 25, 301 P.3d 380 (internal quotation marks and citation omitted). "[A] failure to join offenses under Rule 5-203(A) bars piecemeal prosecution in a subsequent trial." *Gonzales*, 2013-NMSC-016, ¶ 31. "[B]y its very nature, Rule 5-203(C) does not come into play unless and until there is a proper joinder pursuant to Rule 5-203(A)." *State v. Gallegos*, 2007-NMSC-007, ¶ 16, 141 N.M. 185, 152 P.3d 828. "Charges should be joined *whenever* Rule 5-203(A) is satisfied; if either party believes it is prejudiced as a result, the proper procedure is to file a motion for severance with the trial court pursuant to Rule 5-203(C)." *Gallegos*, 2007-NMSC-007, ¶ 17.

**{6}** In approximately six months, between June and December 2017, Defendant allegedly entered seven different retail locations and purchased goods with an invalid, expired, or revoked credit card. On June 29, 2018, the State filed four separate criminal complaints each charging Defendant with one count of fraudulent use of a credit card (over $2,500), contrary to NMSA 1978, Section 30-16-33(A)(2) (2006). Three more complaints were filed on June 22, 2017, October 6, 2017, August 23, 2017, in which Defendant was further charged with falsely obtaining services, contrary to NMSA 1978, Section 30-16-16 (2006); fraud, contrary to NMSA 1978, Section 30-16-6 (2006) and falsely obtaining services, contrary to Section 30-16-16; and fraudulent acts to obtain or retain possession of rented or leased vehicle or other personal property, contrary to NMSA 1978, Section 30-16-39 (2006), respectively.

**{7}** Defendant contends that the same course of conduct was used in each case—attempting to purchase goods with a credit card, the card being declined, and Defendant providing an authorization code, and the merchant later being notified that the transaction could not be completed. Defendant further points out that the alleged offenses in three of the four cases now on appeal occurred in June 2017 in San Juan County, New Mexico. The State counters by arguing that Defendant waived the right to consolidate the cases and, in the alternative, that the offenses were not of the same or similar character because "each [case] was committed against a different victim on a different date[;] there were different goods and services involved in each transaction[;] there are no witnesses or evidence in common[;] and [Defendant] used at least two different credit cards."

**{8}** Because we conclude that Defendant waived her right to have the cases joined, we address this issue first. We note that the State first made this waiver argument in its answer briefs for all of the cases on appeal and Defendant did not file a reply brief in any of the cases before us on appeal. Consequently, by failing to reply to the State's

waiver argument, Defendant has conceded to this argument. *See Delta Automatic Sys., Inc. v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (stating that "[the p]laintiffs' reply brief contains no response to this argument. In this circumstance, such a failure to respond constitutes a concession on the matter"). In resolving this matter, we acknowledge this concession, but will proceed with analyzing the circumstances of this case to determine if Defendant did waive her right to joinder.

**{9}** A defendant may waive a claim that charges are improperly joined under Rule 5-203(A) by not raising the issue prior to trial. *See State v. Paiz*, 2011-NMSC-008, ¶ 13, 149 N.M. 412, 249 P.3d 1235. Similarly, a defendant may waive a claim that the charges should have been joined. *See State v. Jackson*, 2020-NMCA-034, ¶ 1, 468 P.3d 901 (holding that the "[d]efendant waived his compulsory joinder claim by failing to raise the issue before his second trial").

**{10}** Here, Defendant was charged in four separate cases, concerning incidents that occurred over a six-month period involving the fraudulent use of credit and debit cards for the purchase of various items from various merchants. The record establishes that Defendant was aware of the issue of joinder prior to the trial of the first case. Indeed, at pretrial hearings held on November 25, 2019, December 23, 2019, and January 21, 2020, Defendant acknowledged awareness of this issue and informed the district court that they were researching the issue. Ultimately, Defendant never moved for joinder of the charges prior to the trial of the first case. Instead, Defendant chose to file a motion to dismiss the charges three days after the conclusion of the first trial. Given this posture of the case and without the benefit of any argument that no waiver occurred here, Defendant has failed to persuade us that the district court erred by denying Defendant's motion to dismiss, and we therefore need not determine whether the charges should have been joined.

## II.    Sufficiency of Evidence

**{11}** Defendant challenges the sufficiency of the evidence underlying the jury convictions on appeal. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Jackson*, 2018-NMCA-066, ¶ 22, 429 P.3d 674 (internal quotation marks and citation omitted). "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). In reviewing the sufficiency of the evidence, we begin by viewing "the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). "An appellate court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the

facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "When a defendant argues that the evidence and inferences present two equally reasonable hypotheses, one consistent with guilt and another consistent with innocence, our answer is that by its verdict, the jury has necessarily found the hypothesis of guilt more reasonable than the hypothesis of innocence." *State v. Montoya*, 2005-NMCA-078, ¶ 3, 137 N.M. 713, 114 P.3d 393. We address each conviction in turn.

## A.  Fairfield Inn (CR-2017-00586)

**{12}**  Here, Defendant was charged with three counts of falsely obtaining services, contrary to Section 30-16-16. For each count, the jury was instructed that to find Defendant guilty they had to find beyond a reasonable doubt that

1.  . . . Defendant obtained service, food, entertainment or accommodations from Fairfield Inn;

2.  . . . Defendant did not pay for the service, food, entertainment or accommodations;

3.  [t]he value of the service, food, entertainment or accommodations was more than $500.00 [as to Count 1]; was less than $250.00 [as to Counts 2 and 3];

4.  . . . Defendant intended to defraud or cheat Fairfield Inn;

5.  [t]his happened in New Mexico on or about the 20th day of June 2017.

**{13}**  Defendant concedes that there was sufficient evidence to prove that she obtained services or accommodations from Fairfield Inn, that she was unable to pay for the services or accommodations, that the value of the services was more than $500, as to Count 1, and less than $250 as to Counts 2 and 3, and that this occurred on June 20, 2017. Defendant argues only that there was insufficient evidence to find that she intended to defraud or cheat Fairfield Inn.

**{14}**  "Fraudulent intent is defined as the intent to cheat or deceive and may be inferred by reasonable inferences and circumstantial evidence." *State v. Curry*, 2002-NMCA-092, ¶ 11, 132 N.M. 602, 52 P.3d 974. "Intent can rarely be proved directly and often is proved by circumstantial evidence." *State v. Durant*, 2000-NMCA-066, ¶ 15, 129 N.M. 345, 7 P.3d 495.

**{15}**  The evidence at trial established the following: Assistant general manager Lenore Paulson, who by the date of this incident had over twenty years of experience working in the hotel industry, testified that Defendant reserved two rooms under the name Marla Thomas, who Defendant claimed was her mother. Paulson became concerned about Defendant's reservation because the credit card Defendant used for

the reservation was declined. At the time of the reservation, Defendant used an American Express card, which was declined and provided an authorization code to the employee who was handling the reservation. The employee who took the reservation and authorization code did so contrary to her training. If the employee had followed her training, Defendant would not have been able to reserve the rooms. Defendant purchased three gift cards in a similar manner.

**{16}** After discovering the card was declined, Paulson called Defendant's room to request another form of payment. Defendant provided a Visa card which was declined as well, then said she was going to call her bank to get an authorization code. Paulson asked Defendant to let her speak with the bank, Defendant refused. Paulson told Defendant that she could not accept the code and called the police. Based on her experience, Paulson knew that credit card companies do not provide authorization codes to their credit card customers.

**{17}** Officer Warman responded to the Fairfield Inn and investigated the matter. Officer Warman testified that Defendant told him that she was spending her first night in Farmington after just having arrived there from Albuquerque that evening. At the time Defendant said this to Officer Warman, the officer knew Defendant reserved the rooms at the Fairfield Inn the night before he spoke to her. Officer Warman also testified that earlier in the day he spoke with Defendant that he had discovered a letter addressed to Defendant at another hotel in Farmington. During the officer's conversation with Defendant, she told the officer that she could not retrieve the gift cards because she had already mailed them to her house in Albuquerque. The gift cards were later found in Defendant's room after she had been arrested. *See State v. Faubion*, 1998-NMCA-095, ¶ 13, 125 N.M. 670, 964 P.2d 834 (stating that "lies and misleading actions" are evidence of consciousness of guilt). During the course of the investigation, Officer Warman obtained possession of the American Express card and called the number on the back of it. The call was answered by an automatic answering system, which offered two options: to add money to the card or to check the balance on the card.

**{18}** We determine that these facts provide substantial evidence to support the finding that Defendant intended to defraud or cheat Fairfield Inn.

### B.    Aztec Auto Supply (CR-2018-00027)

**{19}** As to the charge of fraud associated with the Aztec Auto Supply, the district court instructed the jury that to find Defendant guilty it had to find beyond a reasonable doubt that

1.    . . . Defendant by any words or conduct, misrepresented a fact to Aztec Auto Supply, intending to deceive or cheat Aztec Auto Supply;

2.      [b]ecause of the misrepresentation and Aztec Auto Supply's reliance on it, Defendant obtained welding supplies and accessories in the amount of over $2,500.00;

3.      [t]he welding supplies and accessories belonged to someone other than . . . Defendant;

4.      [t]he welding supplies and accessories had a market value of over $2,500.00;

5.      [t]his happened in New Mexico on or about the 15th day of July, 2017.

**{20}**   Defendant concedes that there was sufficient evidence to find that the welding supplies and accessories belonged to someone other than Defendant; that the welding supplies and accessories had a market value of over $2,500; and that the incident took place on July 15, 2017, in New Mexico. Defendant argues only that there was insufficient evidence to find she, by any words or conduct, misrepresented a fact to Aztec Auto Supply, intending to deceive or cheat Aztec Auto Supply, and that Aztec Auto Supply relied upon the misrepresentation. Defendant argues the State did not present evidence that Defendant lied about the authorization code, or that Defendant knew that forcing the transaction would result in the transaction later being denied.

**{21}**   Here, store owner, Chris Middlebrook, testified that on July 17, 2017, Defendant attempted to purchase welding equipment with a credit card, Middlebrook observed a store associate swipe the card and the card was declined. Defendant stated that she was going to make a phone call to her bank to get an authorization code, then pointed to the "Force Pay" icon on the screen which allowed the code to enter and a receipt populated. Defendant signed the receipt. The invoices indicated that the sale was made offline, which Middlebrook understood to mean the sale was processed without approval of the card issuer. Middlebrook further testified that when Defendant returned to the store, a few days later, to pick up the remaining items she bought, she requested a refund on an item and presented a different credit card, she was refunded approximately $842. Middlebrook received a notification from his bank that the transaction was not authorized by the credit card issuer and the sale proceeds were charged back by the credit card company.

**{22}**   The State contends that by presenting her card for payment, instructing the employee to press "Force Pay," using a purported authorization code, and signing the receipt, Defendant implied that the transaction was valid. In reliance of Defendant's representation, the State argues Defendant obtained goods from the store.

**{23}**   We agree and conclude there was sufficient evidence for the jury to find that Defendant intentionally misrepresented the validity of the credit card she used to obtain the welding supplies and accessories with the intent to deceive or cheat.

## C.    Bedrooms Plus (CR-2018-00772)

**{24}**    As to the charge of fraudulent use of an invalid or a revoked credit card associated with Bedrooms Plus, the jury was instructed that to find Defendant guilty it had to find beyond a reasonable doubt that

1.    . . . Defendant used a credit card to obtain furniture and linens;

2.    [t]hese goods or services had a value over $2,500.00;

3.    [a]t the time . . . Defendant used the credit card, the credit card was invalid or had been revoked;

4.    . . . Defendant intended to deceive or cheat;

5.    [t]his happened in New Mexico on or about the 15th day of June, 2017.

**{25}**    Defendant argues only that there was insufficient evidence for the jury to find that the credit card she used was "invalid, expired, or revoked" and there was insufficient evidence that Defendant intended to deceive or cheat. Defendant's challenge does not extend to the remaining elements of the offense. Specifically, Defendant argues that the mere fact that the credit card she used was declined is insufficient to establish that the credit card was "invalid, expired, or revoked." We disagree and explain.

**{26}**    Here, the Store owner, Brian Sledge, testified that Defendant attempted to purchase approximately $17,000 of furniture and linens when her American Express credit card was declined. Per the store's merchant agreement, Sledge stated that transactions over $10,000 require authorization, which is typically obtained when Sledge contacts merchant services. Defendant made a phone call and wrote down a code for Sledge to enter, Sledge then called his merchant services provider and was instructed to force the transaction. Sledge testified that this is the only time that a customer had provided him with an authorization code. Defendant presented to Sledge a temporary paper identification card, which contained a county road address. Defendant told Sledge that she had just moved to Farmington. Defendant agreed to leave some of the items at the store until the proceeds were deposited into the store's account. Defendant left the store with approximately $6,600 in furniture and linens. Days later, Sledge received a notification from merchant services stating that American Express did not authorize the transaction, and the money was taken back out of the store's account. Defendant never returned to the store to pick up the rest of the items she purchased.

**{27}**    Investigating Detective McGaha testified that she spoke with Defendant on September 12, 2017, Defendant told her that she had lived in Farmington for the past two or three years and was currently staying at the Fairfield Inn. Defendant denied to

Detective McGaha that she purchased items from Bedrooms Plus. *See Faubion*, 1998-NMCA-095, ¶ 13.

**{28}** Based on these facts as presented to the jury, we conclude that there was sufficient evidence for the jury to determine that Defendant used an invalid credit card to obtain furniture by way of a forced transaction and that Defendant acted with the intent to deceive or cheat.

**D.    Aaron's Rent to Own (CR-2018-00775)**

**{29}** As to the charge of fraudulent use of an invalid or revoked credit card associated with Aaron's Rent to Own, the jury was instructed that to find Defendant guilty it had to find beyond a reasonable doubt that

1.    . . . Defendant used a credit card to obtain goods[,] which were an X-Box and a Samsung Note 8 on December 19, 2017, and a MacBook Laptop Computer and a Samsung Note 8 on December 20, 2017;

2.    [t]hese goods had a value over $2,500.00;

3.    [a]t the time . . . Defendant used the credit card, the credit card was invalid or had been revoked;

4.    . . . Defendant intended to deceive or cheat;

5.    [t]his happened in New Mexico on or about the 19th and 20th days of December, 2017.

**{30}** Defendant argues that there was insufficient evidence for the jury to find that the credit card she used was "'invalid, expired, or revoked," and there was insufficient evidence that Defendant intended to deceive. Defendant's challenge does not extend to the remaining elements of the offense. Specifically, Defendant argues that the mere fact that the credit card was declined and had to be processed offline, combined with the fact that Defendant made a phone call and then provided an authorization code to the merchant, "presents the equally plausible alternative that [Defendant] did everything correctly and that a dispute between the credit card merchant and the store resulted in their failure to get paid." "When a defendant argues that the evidence and inferences present two equally reasonable hypotheses, one consistent with guilt and another consistent with innocence, our answer is that by its verdict, the jury has necessarily found the hypothesis of guilt more reasonable than the hypothesis of innocence." *Montoya*, 2005-NMCA-078, ¶ 3.

**{31}** We determine that there was sufficient evidence for the jury to conclude that Defendant used a credit card that was "invalid, expired, or revoked." Store manager Jeff Wood testified that the card was at first declined, then Defendant entered a code into

the credit card terminal pin pad that took the machine offline and populated a receipt. Wood further testified that he was unfamiliar with the code and did not know where it came from. The store later received a dispute notification from the card issuer indicating that the purchase was not authorized by the issuer. Because the transaction was forced when the terminal was offline, Detective McGaha testified it is not "talking" to the credit card institution, which verifies if the card is valid and approves the transaction immediately.

**{32}** Based on these facts, the jury could reasonably conclude that the credit card was invalid, expired, or revoked and that Defendant forced the transaction with a code intending to deceive or cheat.

**CONCLUSION**

**{33}** For the foregoing reasons, we affirm.

**{34} IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**