# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: June 30, 2017

**NO. 35,411**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MARK WEBB,**

Defendant-Appellant.

**INTERLOCUTORY APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Benjamin Chavez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Blackburn Law Office
Billy R. Blackburn
Albuquerque, NM

Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu
Paul M. Linnenburger
Santa Fe, NM

for Appellant

**OPINION**

**SUTIN, Judge.**

{1}     Defendant Mark Webb was charged in two separate cases after he allegedly surreptitiously videotaped the minor daughter (Victim) of his former girlfriend unclothed in her bathroom. The first case, *State v. Webb*, Second Judicial District Court Case No. D-202-CR-2014-02997 (*Webb I*), was filed in 2014 and charged Defendant with voyeurism (child under eighteen), in violation of NMSA 1978, Section 30-9-20(A)(1) (2007), attempted voyeurism (child under eighteen), in violation of Section 30-9-20(A)(1) and NMSA 1978, Section 30-28-1(A) (1963), tampering with evidence, in violation of NMSA 1978, Section 30-22-5(B) (2003), and battery on a household member, in violation of NMSA 1978, Section 30-3-15(A) (2008). These charges were based on videos dated February 19, 2013 and February 24, 2013 that were discovered on a hidden camera located in Victim's bathroom. The second case, *State v. Webb*, Second Judicial District Court Case No. D-202-CR-2015-01400 (*Webb II*), which is the subject of this appeal, was filed in 2015 and charged Defendant with two counts of sexual exploitation of a child (manufacture), in violation of NMSA 1978, Section 30-6A-3(D) (2007, amended 2016), and one count of attempted sexual exploitation of a child (manufacture), in violation of Sections 30-6A-3(D) and 30-28-1(B). These charges were based on videos dated between January

1, 2013 and January 30, 2013 that were discovered on a computer to which Defendant had access. After the State unsuccessfully sought to join the two cases, Defendant filed a motion to dismiss *Webb II*. The district court denied Defendant's motion, Defendant filed an application for interlocutory appeal, and this Court granted the application.

{2}     On appeal, Defendant argues that *Webb II* should be dismissed because the mandatory joinder provisions of Rule 5-203(A) NMRA were violated, the State chose not to timely pursue the *Webb II* charges and forfeited any discretion to pursue them, and the State's unjustifiable delay in seeking the *Webb II* charges created judicial inefficiency and prejudiced Defendant. For the reasons set forth in this opinion, we hold that *Webb I* and *Webb II* should have been mandatorily joined under Rule 5-203(A) as initially requested by the State. Because the district court should have granted the pretrial motion to join, dismissal of *Webb II* is not appropriate, and therefore, we affirm the district court's denial of Defendant's motion to dismiss.

**BACKGROUND**

{3}     On February 24, 2013, Victim, then age seventeen, discovered a USB camera hidden in her bathroom in the home that she shared with her mother and brother, as well as with mother's boyfriend (Defendant). Detective Steve Walsh, the on-call child exploitation detective, was called to the home. Detective Walsh obtained a search

2

warrant for the USB camera on February 26, 2013, viewed the contents of the camera, and discovered two videos dated February 19, 2013 and February 22, 2013. According to Detective Walsh, in the February 19 video, Defendant could be seen placing and adjusting the camera, and thereafter, Victim could be seen entering the bathroom and undressing. In the February 22 video, Defendant again could be seen placing and manipulating the camera, and thereafter, Victim could be seen entering the bathroom, preparing to take a shower, and noticing the camera, which she subsequently removed from its location.

{4}     Defendant was arrested on February 26, 2013, and charged in Bernalillo County Metropolitan Court with sexual exploitation of a child (manufacture) and attempted sexual exploitation of a child. After his arrest, Defendant was interviewed. During the interview, Defendant apparently admitted to recording Victim "[a]bout half a dozen times" and indicated to police that he would download the recorded videos to the "community laptop" (the laptop), of which Victim's mother was the administrator.[1] Sometime in March 2013, Victim's mother provided the police with

---

[1] We mention these admissions with hesitation because the district court ultimately suppressed Defendant's statements on the ground that there was a *Miranda* violation. However, because Defendant relies on the fact that he told the police about the additional recordings on February 26, 2013, in an attempt to bolster his argument on appeal, we are compelled to mention the incriminating statements even though they cannot later be used as evidence in the State's case.

the laptop so that they could search the computer. Detective Walsh returned the laptop in June 2013 and indicated to Victim's mother that he found nothing on the computer. A few days later, Victim's mother, as the administrator for the laptop, changed the login information for Defendant's accounts and discovered additional videos of Victim. She attempted to call Detective Walsh directly and again through the Albuquerque Police Department. She then contacted a victim's advocate at the Office of the New Mexico Attorney General and told her that she had found more videos on the laptop. The victim's advocate told Victim's mother she would contact Detective Walsh and have him call Victim's mother. Detective Walsh followed up with Victim's mother, and after she showed him how to access the additional videos, the laptop was taken back into evidence by the detective.

{5}     After Defendant's arrest, three target notices were issued to Defendant. The first, dated March 4, 2013, was from the Second Judicial District Attorney and indicated that the State intended to present charges of sexual exploitation of a child, tampering with evidence, and voyeurism, which occurred on or about February 24, 2013. The second, dated August 9, 2013, was from the Office of the Attorney General and indicated that the State intended to present charges of sexual exploitation of a child (three counts) and attempt to commit the same (two counts), which were alleged to have occurred on or between February 19, 2013 and February 24, 2013. The third,

4

dated June 9, 2014, was also from the Office of the Attorney General and restated its intent to present the charges listed in the August 9, 2013 notice.

{6}     Although the first and second notices listed specific dates on which the State intended to present the listed charges to the grand jury, the grand jury only convened on the date listed in the third notice—June 25, 2014. Defendant was subsequently indicted, on June 25, 2014, in district court with voyeurism (child under eighteen), attempted voyeurism (child under eighteen), tampering with evidence, and battery on a household member (*Webb I*). Those charges arose from the videos found on the camera, which were both dated in February 2013.

{7}     On August 28, 2014, Detective Don Roberts with the Albuquerque Police Department requested a forensic examination of the laptop, which had been in police custody for approximately fourteen months. A September 18, 2014 forensic report documented three additional videos of Victim naked in her bathroom that had been saved on the laptop. These videos were dated between January 1, 2013 and January 30, 2013.

{8}     On May 26, 2015, the State procured a second indictment charging Defendant with two counts of sexual exploitation of a child (manufacture) and one count of attempted sexual exploitation of a child (*Webb II*). Those charges arose from the videos found on the laptop that were dated in January 2013. On June 8, 2015, the

State moved for joinder of *Webb I* and *Webb II*. In its motion, the State argued that the charges in each proceeding involved different videos—the former related to the videos on the camera, the latter related to videos on the laptop—but were of similar character, involved the same Victim, and were "based on the same conduct or on a series of acts connected together and constituting parts of a single scheme or plan" under Rule 5-203(A)(2). Defendant agreed that joinder was mandatory under Rule 5-203(A) but argued against joinder because the State did not join the offenses in one indictment. According to Defendant, the State was required to "join offenses at the outset[,]" and because it failed to do so, it was barred from adding additional charges at such a "late juncture."

{9}     On July 1, 2015, the district court denied the motion for joinder on the ground that Defendant had timely filed a peremptory challenge of the district judge and thus the judge "lack[ed] jurisdiction to entertain the motion before the court." On December 17, 2015, Defendant filed a number of pleadings, including a motion to dismiss for failure to properly join the charges in *Webb II* with the charges in *Webb I*. The district court denied Defendant's motion to dismiss on February 24, 2016, concluding that although "[t]he charges in *Webb I* and *Webb II* are subject to joinder pursuant to Rule 5-203" and "the separate incidents charged in *Webb I* and *Webb II* are of the exact same type and were committed by the same individual against the

6

same [V]ictim in the same location, because they are not identical, it is permissible to charge and try them separately." This interlocutory appeal followed.

**DISCUSSION**

{10} In New Mexico, our rule concerning joinder in criminal cases "as originally promulgated was discretionary and reflected the common law." *State v. Gallegos*, 2007-NMSC-007, ¶ 10, 141 N.M. 185, 152 P.3d 828. However, in 1979, consistent with other courts at the time, our Supreme Court issued an order stating that " '[w]hen a person is charged with more than one crime and the crimes can be incorporated in one information or indictment in separate counts, this practice shall be followed.' " *Id.* ¶¶ 11, 14 (emphasis omitted) (quoting Rule 5-203 comm. cmt.). The change reflected the Court's "distaste for piecemeal prosecutions" and mandated joinder in certain cases "in order to avoid disorderly criminal procedures that threaten the existence of our judicial system and risk . . . prejudice to the accused[.]" *Id*. ¶ 14 (omission in original) (alteration, internal quotation marks, and citations omitted).

{11} New Mexico's current approach to joinder in criminal cases is articulated in Rule 5-203(A), which states that "[t]wo or more offenses shall be joined in one complaint, indictment or information with each offense stated in a separate count, if the offenses . . . are of the same or similar character, even if not part of a single scheme or plan; or . . . are based on the same conduct or on a series of acts either

7

connected together or constituting parts of a single scheme or plan." The question of whether offenses must be joined under Rule 5-203(A) is a question of law that we review de novo. *See State v. Paiz*, 2011-NMSC-008, ¶ 10, 149 N.M. 412, 249 P.3d 1235 (stating that Rule 5-203(A) is a mandatory rule and improper joinder under the rule is a question of law, which we review de novo); *State v. Foster*, 2003-NMCA-099, ¶ 6, 134 N.M. 224, 75 P.3d 824 ("We review de novo questions of law concerning the interpretation of Supreme Court rules and the district court's application of the law to the facts of [the] case.").

{12}  The most relevant case regarding Rule 5-203(A) and the ramifications for failing to join offenses is *State v. Gonzales*, 2013-NMSC-016, 301 P.3d 380, a case upon which both parties rely. In *Gonzales*, the defendant was charged with child abuse resulting in death, child abuse not resulting in death, aggravated driving while under the influence, and leaving the scene of an accident after she drove drunk and crashed into another vehicle, killing one child and injuring another. *Id*. ¶¶ 1-2. After the defendant's conviction for negligent child abuse was reversed on appeal for lack of substantial evidence, the defendant was prosecuted for vehicular homicide. *Id*. ¶ 3. In evaluating the lawfulness of the vehicular homicide charge after the defendant had already been through a trial in *Gonzales*, our Supreme Court sua sponte turned to Rule 5-203(A). *Gonzales*, 2013-NMSC-016, ¶¶ 25-26. According to the Court, "[t]he

purpose of a compulsory joinder [rule], viewed as a whole, is twofold: (1) to protect a defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode; and (2) to ensure finality without unduly burdening the judicial process by repetitious litigation." *Id.* ¶ 26 (alteration, internal quotation marks, and citation omitted). The Court held that the vehicular homicide offense was "based on the same conduct against the same victim" as the offenses pursued in the earlier trial and thus must have been joined under Rule 5-203(A). *Gonzales*, 2013-NMSC-016, ¶¶ 25, 27 (emphasis and internal quotation marks omitted). Because the facts of the case mandated joinder under the rule and because the prosecution failed to join the offenses in the first trial, our Supreme Court also held that "a failure to join offenses under Rule 5-203(A) bars piecemeal prosecution in a subsequent trial."*Gonzales*, 2013-NMSC-016, ¶¶ 30-31. In deciding that the prosecution was barred from pursuing a vehicular homicide in *Gonzales*, our Supreme Court noted that:

> This is not a case in which the charge the [prosecution] now seeks to bring, vehicular homicide, was unknown at the time [the d]efendant was indicted. The [prosecution] had at least three different opportunities to join these offenses. The first was in the original indictment, but it chose to ask the grand jury to indict only on charges of child abuse. The second was at the hearing on the motion to dismiss. The [prosecution] was made fully aware that the charge was available and admitted at that hearing that it knew it was taking a risk when it decided on this particular trial strategy. Finally, . . . the [prosecution] could have asked

9

> for a vehicular homicide instruction notwithstanding its omission from the indictment, but again the [prosecution] elected not to do so.

*Id.* ¶ 32. Thus, our Supreme Court affirmed that the subsequent prosecution of the defendant for vehicular homicide was barred. *Id.* ¶ 34.

{13}     Defendant's position on appeal is that the State was required under Rule 5-203 to bring all charges related to Defendant's alleged videotaping of Victim in a single indictment and that because the State chose not to pursue the charges in a single indictment, dismissal of *Webb II* is appropriate as stated in *Gonzales*, 2013-NMSC-016. Defendant asserts that the State and its prosecutors knew about the videos on the laptop prior to the indictment in *Webb I* as evidenced by: the statement from Victim's mother that she informed the police and a victim's advocate from the Office of the Attorney General about the laptop videos; Defendant's admission to police that he saved videos of Victim to the laptop; and the target letters from the Office of the Attorney General that alluded to five counts, which, as a matter of logic and math, appear to be related to the two videos found on the camera and the three videos found on the laptop. Defendant argues that because the State chose not to join the charges at the time of the indictment in *Webb I*, the State abandoned the charges that were ultimately pursued in *Webb II*. Defendant asserts that dismissal is the only appropriate remedy for the failure to join because there was a long delay between the filing of *Webb I* and *Webb II*, the State had no justification for the delay, the failure resulted

10

in inefficiency and harmed judicial resources, the failure prejudiced and harmed Defendant, and Rule 5-203 is mandatory.

{14}    We begin our analysis by noting that there is no real dispute that the offenses should have been joined under Rule 5-203. The State argued that joinder was mandatory in its motion for joinder, and Defendant admitted that joinder was mandatory in his response to the motion for joinder and in his motion to dismiss. Although the district court ultimately concluded that *Webb I* and *Webb II* could proceed separately in its order denying Defendant's motion to dismiss, it noted that "[t]he charges in *Webb I* and *Webb II* are subject to joinder pursuant to Rule 5-203[,]" and "the separate incidents charged in *Webb I* and *Webb II* are of the exact same type and were committed by the same individual against the same [V]ictim in the same location[.]"

{15}    We agree that the offenses in *Webb I* and *Webb II*, all of which were related to Defendant's alleged videotaping of Victim in her bathroom, were of the same or similar character or based on the same conduct or on a series of acts either connected together or constituting parts of a single scheme or plan. *See Gallegos*, 2007-NMSC-007, ¶ 15 (stating that the defendant "engaged in inappropriate sexual activities with minors in his care[,]" and at the very least, his acts toward the two victims "were of the same or similar character regardless of whether they were part of a single scheme

or plan" (internal quotation marks and citation omitted)); *State v. Riordan*, 1974-NMCA-013, ¶¶ 4-5, 86 N.M. 92, 519 P.2d 1029 (recognizing that "[i]t would be difficult to conceive of three separate offenses, more the same or similar in character" where the defendant sold controlled substances to a single officer on three occasions in the same community over the course of approximately three weeks). The rule does not require that the cases be "identical" as suggested by the district court. We hold that the district court erred in not joining all the offenses into one proceeding.

{16} Although there is no real dispute that the offenses in *Webb I* and *Webb II* were of the same or similar character or continued parts of a single scheme or plan, both parties on appeal expend much of their energy and briefing on whether the State and/or the prosecutors knew about the laptop videos prior to the *Webb I* indictment. Interestingly, however, prosecutorial knowledge, although a seemingly reasonable limiter to Rule 5-203, is not explicitly required under Rule 5-203. *See* Rule 5-203; *see also* Ryan C. Schotter, *State v. Gonzales: Reinvigorating Criminal Joinder in New Mexico*, 44 N.M. L. Rev. 467, 485-88 (2014) (noting that Rule 5-203 is "devoid of any of the important limiting principles expressed in the model codes promulgated by the ABA, ALI, and NCCUSL[,]" including a prosecutorial knowledge limitation). And although our Supreme Court stated in *Gonzales*, 2013-NMSC-016, ¶ 32, that it was "not a case in which the charge the [prosecution sought] to bring . . . was

12

unknown at the time [the d]efendant was indicted[,]" *Gonzales* does not say that a finding of actual prosecutorial knowledge is necessary in order for there to be a compulsory joinder violation. But, more importantly, we need not and do not address prosecutorial knowledge head-on here because, in this case, even assuming arguendo that the State and/or the prosecutors knew about the laptop videos prior to the *Webb I* indictment, we hold that the State was not precluded from seeking to join the offenses in *Webb II* with similar offenses in *Webb I*, as it did in this case. The relevant inquiry is whether the State was permitted, under Rule 5-203, to move for joinder of the offenses in *Webb II* after the indictment was filed in *Webb I*, or whether they were, as a matter of law, barred from joining offenses once there was an indictment in *Webb I*.

{17}     Although Rule 5-203 is admittedly broad and states that offenses shall be joined "in one complaint, indictment or information[,]" our Supreme Court in *Gonzales* suggested that additional offenses could be joined after an indictment even when a prosecutor knows of the additional offenses at the time of the indictment. As noted earlier, in *Gonzales*, the Court identified two post-indictment opportunities that the prosecution had to seek joinder of additional charges—one at the time of the hearing on a motion to dismiss and another by asking for "a vehicular homicide instruction notwithstanding its omission from the indictment[.]" 2013-NMSC-016,

13

¶ 32. If the sanction of dismissal for New Mexico's compulsory joinder provision were intended automatically to be triggered upon the State's failure to join all charges in an original indictment, there would have been no legal or other basis for our Supreme Court to reference additional opportunities for joinder thereafter. We interpret the Supreme Court's instructions in *Gonzales* as indicating that additional offenses can be joined post-indictment, but prior to a case being submitted to a jury.

{18}    Applying the Court's guidance in *Gonzales* to the present case, we hold that the State, having moved to join the offenses in *Webb I* and *Webb II* post-indictment but pretrial, did not run afoul of Rule 5-203. Because the State properly sought to join the offenses in a manner that is acceptable under the rule and as contemplated by *Gonzales*, there is no merit to Defendant's argument that *Webb II* should be dismissed.

**CONCLUSION**

{19}    For the reasons set forth in this opinion, we affirm the district court's denial of Defendant's motion to dismiss and remand for proceedings consistent with this opinion.

{20}    **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

14

**WE CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

_____
**JULIE J. VARGAS, Judge**