The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: **August 22, 2023**

**No. A-1-CA-39886**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**CARLOS ALBERTO SUMMERS,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Court Judge**

Raúl Torrez, Attorney General
Van Snow, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**BACA, Judge.**

{1} On June 5, 2019, Defendant was arrested for possession of burglary tools and trespassing. After Defendant pleaded no contest in the magistrate court to trespassing, the State, in a separate case, charged Defendant with a nonresidential burglary alleged to have also occurred on June 5, 2019. Defendant moved to dismiss in the second case arguing that the charges, in that case, violated the compulsory joinder rule and violated his double jeopardy rights. The district court denied the motion, and Defendant now appeals. Because we agree with Defendant that the State violated the compulsory joiner rule, Rule 5-203(A) NMRA, we reverse Defendant's conviction, and we do not reach Defendant's double jeopardy argument.

**Factual and Procedural Background**

{2} On June 5, 2019, Officer B. Castillo found Defendant in a back lot of Alfredo's Auto Sales (Alfredo's) in Farmington, New Mexico. Alfredo's is located next to Singleton's Mobile Homes (Singleton's). Officer Castillo approached Defendant and noticed that Defendant was wearing gloves, a ski mask with cut-out eye holes, and three silver and turquoise rings. After Officer Castillo searched Defendant for weapons he found that Defendant had a screwdriver, a silver and turquoise necklace, and keys in his pocket. Officer Castillo arrested Defendant for possession of burglary tools and trespassing. A criminal complaint charging

Defendant with these crimes was filed on June 6, 2019, in the San Juan County Magistrate Court as cause No. M-47-FR-2019-406 (Case 1).

{3} After Defendant's arrest, but on the same night, Officer Castillo discovered two holes cut in the fence between Alfredo's and Singleton's. One of the holes appeared to be freshly cut. Officer Castillo found two backpacks, a leather briefcase, and a silver platter near this hole.

{4} On June 10, 2019, as part of the continuing investigation into this incident, Detective D. Rock of the Farmington Police Department spoke with Sugar Singleton, the owner of Singleton's. She told the detective that the necklace Defendant had was hers. On June 11, 2019, Detective Rock obtained a search warrant for the backpack and leather briefcase. During the search of those items, Detective Rock discovered tools, silver kitchenware, and a name badge for Helen Singleton. The next day, June 12, 2019, Defendant entered into a plea and disposition agreement with the State in which he pleaded no contest to criminal trespass, and the possession of burglary tools charge was dismissed. Over a year later, on July 29, 2020, Defendant was sentenced in that case.

{5} On August 21, 2019, while Case 1 was still pending sentencing and over two months after Defendant's initial arrest on June 5, 2019, the State filed a second criminal complaint in San Juan Magistrate Court charging Defendant with the fourth-degree felony of nonresidential burglary of Singleton's (Case 2). The date of

2

the alleged burglary was June 5, 2019, the same date as the offenses charged in Case 1.

{6} On May 30, 2020, while still waiting to be sentenced in Case 1, Defendant moved the district court to dismiss Case 2. In his motion, Defendant claimed that Case 2 violated his double jeopardy rights and should have been joined with Case 1, pursuant to Rule 5-203(A).

{7} The district court held a hearing on Defendant's motion to dismiss Case 2, on July 7, 2020.[1] At the hearing, the State conceded that the charges should have been joined, absent the no contest plea in magistrate court in Case 1. The district court denied Defendant's motion, finding that jeopardy had not yet attached and that the State did not violate the mandatory joinder rule because the State did not have enough evidence to charge the offense of nonresidential burglary when it charged Defendant with possession of burglary tools and trespassing. Following the denial of his motion, Defendant entered into a conditional plea agreement in Case 2, preserving his right to appeal the denial of his motion to dismiss, in which he pleaded no contest to nonresidential burglary and an unrelated charge of trafficking of methamphetamine. Defendant now appeals.

---

[1]Even at this time, Defendant had yet to be sentenced in Case 1.

# DISCUSSION

## I. Compulsory Joinder

{8} Defendant argues that Rule 5-203(A) required the joinder of his charge of nonresidential burglary with the charges in Case 1. Defendant recognizes that, under *State v. Aragon*, a defendant may not avoid prosecution on greater felony level charges by quickly pleading to lesser, unrelated charges. *See* 2017-NMCA-005, ¶ 9, 387 P.3d 320. Defendant argues that this exception to mandatory joinder under Rule 5-203(A) does not apply to his case because, unlike *Aragon*, the charges he pleaded to in magistrate court were of the same or similar character and based on the same conduct as the charges he faced in district court.

## A. Standard of Review

{9} "[W]hether offenses must be joined under Rule 5-203(A) is a question of law that we review de novo." *State v. Webb*, 2017-NMCA-077, ¶ 11, 404 P.3d 804; *see also State v. Foster*, 2003-NMCA-099, ¶ 6, 134 N.M. 224, 75 P.3d 824 ("We review de novo questions of law concerning the interpretation of [our] Supreme Court rules and the district court's application of the law to the facts of [the] case.").

## B. Compulsory Joinder in New Mexico Under Rule 5-203(A)

{10} Our compulsory joinder rule, Rule 5-203(A), provides:

> Two or more offenses *shall* be joined in one complaint, indictment or information with each offense stated in a separate count, if the offenses, whether felonies or misdemeanors or both:

4

> (1)     are of the same or similar character, even if not part of a single scheme or plan; or

> (2)     are based on the same conduct or on a series of acts either connected together or constituting parts of a single scheme or plan.

(Emphasis added.)

{11}     "At common law, whether charges should be joined in the same indictment was a matter of prudence and discretion which rested with the judges to exercise." *State v. Jackson*, 2020-NMCA-034, ¶ 10, 468 P.3d 901 (internal quotation marks and citation omitted). "Following the common law, our joinder rule was originally discretionary." *Id.* "In 1979, our Supreme Court exercised its supervisory powers to change our joinder rule from permissive to mandatory, recognizing that requiring prosecutors to get their facts straight, their theories clearly in mind and trying all charges together has the salutary effect of avoiding prejudice to the defendant, as well as our distaste for piecemeal prosecutions." *Id.* (alteration, internal quotation marks, and citation omitted). Thus, "[o]ur rules of criminal procedure require that similar offenses be joined in one prosecution and not be brought piecemeal by way of sequential trials." *State v. Gonzales*, 2013-NMSC-016, ¶ 25, 301 P.3d 380. Rule 5-203 is "mandatory; it is not a discretionary or permissive rule; it demands that the [s]tate join certain charges." *Id.* (internal quotation marks and citation omitted) "In terms of barring successive prosecutions, however, compulsory joinder and double jeopardy are closely related—two sides of the same coin." *Id.* ¶ 26.

{12} "The purpose of [our] compulsory joinder statute, viewed as a whole, is twofold: (1) to protect a defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode; and (2) to ensure finality without unduly burdening the judicial process by repetitious litigation." *Gonzales*, 2013-NMSC-016, ¶ 26 (internal quotation marks and citation omitted). Even in cases involving different victims, as is the case here, our Supreme Court has stated that "the compulsory joinder rule means what it says," it "require[s] joinder of offenses of the same or similar character, *even when arising from two different victims*." *Id.* ¶ 27 (emphasis added) (internal quotation marks and citation omitted).

{13} "Charges should be joined *whenever* Rule 5-203(A) is satisfied; if either party believes it is prejudiced as a result, the proper procedure is to file a motion for severance with the [district] court pursuant to Rule 5-203(C)." *State v. Gallegos*, 2007-NMSC-007, ¶ 17, 141 N.M. 185, 152 P.3d 828. Our Supreme Court has observed, in the context of a case that went to trial, that the State had at least three opportunities to seek to join offenses: first, at the time of indictment; second, by motion before trial; and third, when the parties request jury instructions on the elements of the charges being prosecuted. *See generally Gonzales*, 2013-NMSC-016, ¶ 32. If the State fails to join the additional charges before jeopardy attaches, the State risks losing the ability to pursue charges that are not a lesser included

6

offense to the charges it has already brought. *See State v. Meadors*, 1995-NMSC-073, ¶¶ 12-13, 121 N.M. 38, 908 P.2d 731 (setting forth when the district court should grant a request for a lesser included offense instruction); *see also* Rule 5-204(A) NMRA (stating that "[t]he court may at any time prior to a verdict cause the complaint, indictment or information to be amended in respect to any such defect, error, omission or repugnancy if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced").

{14}     When charges that are required to be joined under Rule 5-203(A) are not joined in one prosecution as multiple counts, the subsequent prosecution of those charges that should have been joined originally is generally barred. *See Gonzales*, 2013-NMSC-016, ¶ 30. Although our Supreme Court has established the remedy for violating Rule 5-203(A), neither the plain language of Rule 5-203 nor *Gonzales* place any explicit limitation on this rule. Consequently, this Court has, in the years since *Gonzales* was announced, begun to place limitations on Rule 5-203(A). *See State v. Grubb*, 2020-NMCA-047, ¶ 13, 475 P.3d 794 (holding that venue functions as a reasonable limitation to compulsory joinder as venue requirements are grounded in New Mexico's Constitution, and court rules do not circumvent or supersede constitutional requirements); *see also Aragon*, 2017-NMCA-005, ¶ 9 (holding that a defendant may not avoid prosecution on greater felony level charges by quickly

7

pleading to lesser unrelated charges). In the case before us today, we are asked to consider additional limits to Rule 5-203(A).

**C.      Limitations to Rule 5-203(A)**

**1.      The "No-Bar" Rule**

{15}     The State argues that in order to reasonably limit Rule 5-203(A)'s broad language, this Court, in *Aragon*, 2017-NMCA-005, ¶ 9, adopted a "no-bar" rule: a rule providing that when a guilty or nolo contendere plea is entered in the original prosecution, a subsequent prosecution for a joinable offense is not barred. *See* Ryan C. Schotter, *State v. Gonzales: Reinvigorating Criminal Joinder in New Mexico*, 44 N.M. L. Rev. 467, 473 n.51, 496 n.171 (2014) (citing Allan D. Vestal & Douglas J. Gilbert, *Preclusion of Duplicative Prosecutions: A Developing Mosaic*, 47 Mo. L. Rev. 1, 24 (1982)). The State argues that the no-bar rule adopted in *Aragon* requires that we affirm the district court. Defendant recognizes *Aragon's* holding but argues that his case is distinguishable. Thus, to decide this case, we revisit *Aragon*.

{16}     In *Aragon*, the defendant was initially charged in magistrate court with felony driving while intoxicated (DWI), but the prosecution decided it needed to investigate the number of the defendant's prior DWI convictions and dismissed the charge without prejudice. 2017-NMCA-005, ¶ 3. Two days after dismissal of the DWI charge, the defendant was separately charged in magistrate court with speeding, the reason the defendant was stopped by police, and for his contact with police leading

8

to his subsequent arrest for DWI. Defendant quickly pleaded no contest to that charge and paid the fine. *See id.* Approximately three months later, after completing its investigation, the state charged the defendant with misdemeanor DWI. *See id.* ¶¶ 4, 9. The defendant moved to dismiss the DWI charge, arguing that the state did not join the DWI and speeding charges as required by the compulsory joinder rule. The magistrate court denied the motion. *Id.* ¶ 4. Following a conviction for DWI, the defendant appealed to the district court, which also rejected the defendant's compulsory joinder argument and found him guilty of DWI. *Id.* ¶ 5.

{17} Defendant appealed the district court's decision to this Court, and we affirmed. *See id.* ¶ 10. We did so because "the speeding offense played no part in the [DWI] charge and conviction." *Id.* ¶ 9. We held that the two offenses were "not of the same or similar character, nor [were] the offenses based on the same conduct." *Id.* We reasoned, therefore, that Rule 5-203(A) did not apply, and thus joinder was not required. *See id.* ¶¶ 1, 9.

{18} Additionally, in *Aragon*, we observed that "to hold that joinder here was compulsory would . . . not be a rational disposition," and we concluded that "[a] defendant should not be allowed to bar his later prosecution simply by rushing to plead to a considerably lesser traffic offense." *Id.* ¶ 9. In reaching this conclusion, we relied on both the American Bar Association Standards (ABA Standards) for Criminal Justice Section 13-2.3(d) (2d ed. 1980) and the Uniform Model Penal Code

9

(MPC) § 1.11(2) (West 2022). *See id.* We observed that the ABA Standards and the MPC each have their own version of the no-bar rule and that each of these versions supported "the view that a defendant's entry of a no contest plea to a lesser offense . . . does not bar a subsequent prosecution of an additional, greater offense even if the two offenses occur during one episode." *Id. Compare* ABA Standards § 13-2.3(d), *with* MPC § 1.11(2). Under the ABA Standards' approach, "[e]ntry of a plea of guilty or nolo contendere to one offense does not bar the subsequent prosecution of any additional offense based upon the same conduct or the same criminal episode." ABA Standards § 13-2.3(d). However, under the MPC approach, "[a] prosecution is not a bar . . . [*if* t]he former prosecution was procured by the defendant without the knowledge of the appropriate prosecuting officer *and* with the purpose of avoiding the sentence that might otherwise be imposed." MPC § 1.11(2) (emphasis added). In our view, the *Aragon* court did not adopt either approach, but did adopt a no-bar rule in which a defendant could not *rush* to plead to a lesser offense to avoid later prosecution for additional or more serious offenses.

{19}     In this case, we conclude that Defendant did not rush to plea to trespass in Case 1 in order to avoid additional or more serious charges related to the events of June 5, 2019. Here, as to Case 1, our review of the record reflects that: (1) on June 6, 2019, Defendant was charged by the State by criminal complaint in Case 1 with the crimes of possession of a burglary tool and trespassing related to Alfredo's; (2)

10

on June 12, 2019, while the State was aware of facts that linked Defendant to the burglary of Singleton's, Defendant pleaded to the trespass charge related to Alfredo's; (3) Defendant entered his no contest plea, not at the first opportunity he had to enter a plea such as at his first appearance on June 6, 2019, but at a later plea hearing held on June 12, 2019, before the magistrate court; (4) Defendant's no contest plea was entered pursuant to a *written* plea and disposition agreement;[2] (5) the State was aware of the no contest plea as the plea and disposition agreement was signed and approved by a prosecutor; (6) the plea agreement was approved and accepted by a magistrate judge; and (7) the plea agreement appears to be the result of negotiation between the State and Defendant because in the plea agreement the State agrees to dismiss the felony possession of burglary tools charge in exchange for Defendant's no contest plea to misdemeanor trespassing.

[2]We find it significant, for reasons to be discussed below, that Defendant pleaded no contest pursuant to the terms of a formal written plea and disposition agreement signed by the State, defense counsel, and Defendant, which was approved by a magistrate judge. The plea and disposition agreement did not specifically provide what charges would be dismissed in exchange for Defendant's no contest plea. The plea agreement vaguely provided that "the following charges will be dismissed, or if not yet filed, shall not be brought against the defendant: remainder." Although this appeal does not require us to interpret the plea agreement, we note that when a criminal case is resolved by way of a plea agreement, the parties have some control over the preclusive effect on any subsequent prosecution. Subject to the trial court's approval, the parties are free to include provisions in the plea agreement that specifically address pending charges and possible future charges, potentially providing greater clarity to the parties about their rights and obligations and to the courts if a dispute arises regarding the preclusive effect of a plea agreement.

11

{20} Apart from Defendant's plea hearing occurring seven days after his arrest, and six days after the charges were filed against him in Case 1, the record is devoid of any concrete evidence that Defendant rushed to take the plea to avoid additional and/or more serious charges. Even so, as set forth above, the State was fully aware of and involved in the plea agreement, and the same district attorney's office prosecuted Cases 1 and 2. Consequently, we cannot conclude that Defendant's no contest plea in Case 1 was entered into in a rushed manner in order to avoid future and more serious charges related to the incidents of June 5, 2019. *Cf. Aragon*, 2017-NMCA-005, ¶ 9 (holding that a defendant may not avoid prosecution on greater felony level charges by quickly pleading to lesser unrelated charges).

**2.      Prosecutorial Knowledge**

{21} The State also argues that, because the charge of nonresidential burglary was a charge that the State knew they could not pursue at the time Defendant pleaded no contest in magistrate court, Rule 5-203(A) does not require joinder. The State argues, in essence, that we should adopt a prosecutorial knowledge limitation on joinder to affirm this case. *See* Schotter, 44 N.M. L. Rev., *supra*, at 487-88 ("[T]he prosecutorial knowledge restriction permits successive prosecution for a joinable offense when the prosecutor lacked a sufficient basis in knowledge as to the existence of the offense at the time of the initial prosecution."). As we will explain,

12

we agree that prosecutorial knowledge is required but conclude that the prosecution had the requisite knowledge in this case.

{22} The question presented requires us to construe Rule 5-203(A). In doing so, we examine the rule's plain language, the context of its promulgation, the history of the rule, and its object and purpose. *See Kipnis v. Jusbasche*, 2017-NMSC-006, ¶¶ 10-11, 388 P.3d 654. The text of Rule 5-203(A) does not explicitly require prosecutorial knowledge, as this Court recognized in *Webb*, 2017-NMCA-077, ¶ 16. But in the context of Rule 5-203(A), textual silence does not end the inquiry because, as explained above, this Court has imposed limitations that are not present in the plain text in order to ensure that Rule 5-203(A) serves its intended purposes in a reasonable manner. In *Webb*, this Court observed that a prosecutorial knowledge requirement was "a seemingly reasonable limiter to Rule 5-203," but this Court neither accepted nor rejected it. *Webb*, 2017-NMCA-077, ¶ 16.

{23} We agree with this observation and conclude that we must adopt such a limitation. We think it would be unreasonable to bar the State from bringing a subsequent prosecution if the State lacked knowledge of the factual basis for the subsequent charges. *Cf.* Rule 16-308(A) NMRA ("The prosecutor in a criminal case shall . . . refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause.").

13

{24} We also find it persuasive that other states have recognized that prosecutorial knowledge is a reasonable limitation. For example, Colorado has expressly included within the text of their joinder statute a limitation on joinder based upon the prosecution's knowledge. *See, e.g.*, Colo. Rev. Stat. Ann. § 18-1-408(2) (West 2000) ("If the several offenses are actually known to the district attorney at the time of commencing the prosecution and were committed within the district attorney's judicial district, all such offenses upon which the district attorney elects to proceed must be prosecuted by separate counts in a single prosecution if they are based on the same act or series of acts arising from the same criminal episode."). In Colorado, this mandate has been interpreted to mean that the prosecuting official must "participate" in the decision to prosecute. *See People v. Allen*, 944 P.2d 541, 544 (Colo. App. 1996) (citing *Williamsen v. People*, 735 P.2d 176, 181 (Colo.1987) (en banc) (participation by a district attorney in the decision to initiate a criminal prosecution is a significant factor in determining whether the prosecutorial knowledge requirement of Section 18-1-408(2) is established)).

{25} In another example, in Georgia their joinder statute provides that "[i]f the several crimes arising from the same conduct are *known* to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution." Ga. Code Ann. § 16-1-7(b) (West 1982) (emphasis added). Georgia's State Supreme Court has

interpreted this to mean that circumstantial evidence of knowledge, such as a district attorney's name on the charging documents in each case, is enough to show that the separate offenses were known by the state. *See State v. Smith*, 381 S.E.2d 37, 37 (Ga. 1989). Thus, actual knowledge can be inferred from circumstantial evidence.

{26}     Today, we hold that when prosecuting a defendant, if the state knows of offenses that have been or will be filed that are required to be joined pursuant to Rule 5-203(A), the state must join these charges into a single prosecution if the offenses were committed in the same county. *See also Grubb,* 2020-NMCA-047, ¶ 13 (holding that venue functions as a reasonable limitation to compulsory joinder as venue requirements are grounded in New Mexico's Constitution, and court rules do not circumvent or supersede constitutional requirements).

{27}     Here, the State had knowledge that they could have pursued the nonresidential burglary charge as early as when they initially charged Defendant with possession of burglary tools in Case 1 on June 6, 2019, and as late as when the State filed the nonresidential burglary charge against Defendant in Case 2, August 21, 2019. In reaching this conclusion, in addition to those items we discuss below, we consider that, in its brief, the State admitted that during arguments on Defendant's motion to dismiss, "the State conceded that it would have had to join the two offenses into a single charging document if Defendant had not already [pleaded] in the first case."

{28} As additional support for our conclusion, we point to the following. In Case 1, Defendant was originally charged with possession of burglary tools and criminal trespass for an incident on June 5, 2019. As early as the night of Defendant's arrest, June 5, 2019, the State knew: (1) Singleton's had been burglarized recently prior to the night of Defendant's arrest; (2) Defendant was arrested in the rear lot of Alfredo's near the fence separating Alfredo's from Singleton's under suspicious circumstances wearing a ski-mask with makeshift eye holes cut-out and latex gloves inside another pair of gloves; (3) Defendant had in his possession the burglary tool (a screw driver), three silver and turquoise rings and a silver and turquoise necklace; (4) two holes, one of which appeared to be fresh, were cut into the fence between Alfredo's and Singleton's; (5) a backpack, a leather briefcase and a silver platter were recovered near the freshly cut hole in the fence; (6) Defendant admitted to police that he trespassed onto Alfredo's property but denied taking part in the burglary of Singleton's, claiming that these burglaries had been committed by a homeless acquaintance, Doug Gurley; (7) Defendant gave explanations to police for the screwdriver and gloves; and (8) law enforcement did not believe these statements.

{29} Additionally, at the time Defendant pleaded no contest to the charge of possession of burglary tools in magistrate court on June 12, 2019, seven days after Defendant was arrested and charged with possession of burglary tools, the State

knew: (1) on June 10, 2019, Sugar Singleton confirmed that the silver and turquoise necklace police found in Defendant's possession on June 5, 2019, was hers; and (2) on June 11, 2019, police had searched the backpack and leather briefcase pursuant to a search warrant, and found tools, silver kitchenware, and a name badge belonging to Helen Singleton.

{30}   Further, by the time the State filed the criminal complaint in Case 2 on August 21, 2019, the State knew: (1) Defendant's phone records showed that Defendant and Doug Gurley, the "homeless acquaintance" Defendant blamed for the burglary of Singleton's, had spoken forty-seven times on June 4 and June 5; (2) on June 18, 2019, Doug Gurley was arrested for a new burglary of Singleton's; and (3) during Doug Gurley's interview by police on June 18, 2019, he told police that he had stolen items from Singleton's and given them to Defendant, who later sold them at a pawn shop in Colorado, but that he had not been with Defendant on June 5, 2019, although Defendant had texted him about it.

{31}   Thus, the record demonstrates that the State knew of Defendant's involvement in the burglary of Singleton's as early as June 5, 2019, the night of Defendant's arrest in Case 1, and as late as August 21, 2019, when the State filed the nonresidential burglary charge against Defendant in Case 2, and had ample opportunity to join the nonresidential burglary charge with the charges in Case 1. As our Supreme Court has noted, "decisions have consequences," and on appeal, "we do not second-guess

17

the tactical decisions of the litigants." *Gonzales*, 2013-NMSC-016, ¶ 33 (internal quotation marks and citation omitted); *see State v. Villa*, 2004-NMSC-031, ¶ 14, 136 N.M. 367, 98 P.3d 1017. Here, the State chose only to charge Defendant with possession of burglary tools and trespassing, and never, even as late as the hearing on Defendant's motion to dismiss, sought to join the charges in Case 1 with the nonresidential burglary charge in Case 2 in either Case 1 or Case 2.

{32}     We further note that Defendant had yet to be sentenced in Case 1 by the time of either the filing of the complaint in Case 2, the filing of the motion to dismiss in Case 2, or the hearing on the motion to dismiss in Case 2, which was held on July 7, 2020. As to this latter point, we conclude that because Defendant was not sentenced in Case 1 until July 29, 2020, jeopardy as to that case did not attach until July 29, 2020. *See State v. Angel*, 2002-NMSC-025, ¶¶ 10-16, 132 N.M. 501, 51 P.3d 1155 (holding that jeopardy attaches when the court enters a judgment and imposes a sentence on a guilty plea, not when the plea is accepted).[3] Therefore, the State still had the opportunity to dismiss the charges in Case 1 and join those charges with the charges in Case 2 as late as the date of the hearing on Defendant's motion to dismiss, where the State admitted that joinder of the charges was otherwise appropriate. *See*

---

[3]We cite *Angel* to emphasize that there is a point when the State would no longer be able to join the charges in Case 1. That end point was when Defendant was sentenced pursuant to the plea agreement because that is when double jeopardy attached and Defendant could no longer be prosecuted for those charges.

18

*id.* ¶ 1 (holding that the Double Jeopardy Clause did not bar the defendant's subsequent prosecution in district court where the magistrate court accepted the defendant's plea but dismissed the charges prior to sentencing).

{33}     Based on all the above, we hold, pursuant to Rule 5-203(A), that the charge of nonresidential burglary as charged in Case 2 and the charges in Case 1 should have been joined by the State. Accordingly, we reverse and vacate Defendant's conviction for nonresidential burglary contrary to NMSA 1978, Section 30-16-3(B) (1971). *See Gonzales*, 2013-NMSC-016, ¶ 30 (holding that when the state fails to properly join charges required under Rule 5-203(A), a subsequent prosecution is barred).

{34}     This result is in accord with the purpose of Rule 5-203(A) which is "(1) to protect a defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode; and (2) to ensure finality without unduly burdening the judicial process by repetitious litigation." *Gonzales*, 2013-NMSC-016, ¶ 26 (internal quotation marks and citation omitted).

{35}     Because we reverse Defendant's conviction based on Defendant's Rule 5-203(A) argument, we do not reach Defendant's double jeopardy argument.

**CONCLUSION**

**{36}** For the reasons set forth above, we reverse and vacate Defendant's conviction for nonresidential burglary.

**{37}** **IT IS SO ORDERED.**

_____

**GERALD E. BACA, Judge**

**WE CONCUR:**

_____

**KRISTINA BOGARDUS, Judge**

_____

**ZACHARY A. IVES, Judge**